**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | **No. 08 CR 063** |
| **v.** | ) | |
| | ) | **Judge Blanche M. Manning** |
| **DOMINGO-CASTRO, et al.** | ) | |

**DEFENDANT CHINCHILLA-LINARES'S SENTENCING SUBMISSION**

Boris Chinchilla-Linares, through his attorney, Keith Scherer, presents this

Sentencing Submission for the Court's consideration.

This Submission contains the following matters:

- Defendant's Sentencing Memorandum

- Peru Police Department Report

- ICE Report of Investigation

- Letters and Photos in Support of Defendant

Respectfully Submitted,


_____s/Keith J. Scherer_____
Attorney for Defendant, Boris Chinchilla


Keith J. Scherer
Law Office of Keith J. Scherer, PC
6585 N. Avondale Ave., Suite D
Chicago, IL 60631
(773)774-6741

1

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | **No. 08 CR 063** |
| v. | ) | |
| | ) | **Judge Blanche M. Manning** |
| DOMINGO-CASTRO, et al. | ) | |

**DEFENDANT CHINCHILLA-LINARES'S SENTENCING MEMORANDUM**

Boris Chinchilla-Linares, through his attorney, Keith Scherer, submits this

Sentencing Memorandum for the Court's consideration.

**INTRODUCTION**

The Defendant, Boris Chinchilla-Linares, asks the court to render a sentence

under the guideline range through application of the factors under 18 U.S.C. 3553(a). The

defendant provided extraordinary cooperation to the government from the moment of

arrest. Moreover, his personal history demonstrates that he has no risk of recidivism. To

the contrary, he has overcome serious hardship and has a strong work ethic and has

shown clear remorse for his conduct. While not excusing his misconduct in any way, his

motivation in making this trip was to take care of his wife and unborn child and was an

aberration. Because of these and other factors, a sentence below the recommended

sentencing guideline is appropriate in this case and consistent with the fundamental

sentencing goals articulated in 18 U.S.C. 3553(a)(2).

2

A.  **FACTORS IN SUPPORT OF A SENTENCE BELOW THE GUIDELINE RANGE**

The defendant has been held in confinement since his arrest at the end of January. The government has recommended a sentence at the low end of the range. Given that the low end of the range is 15 months, a sentence of not greater than a year and a day would be sufficient to serve the purposes of 18 U.S.C. 3553(a)(2). The following factors support this request.

1.  **The Extent and Quality of the Defendant's Cooperation was Extraordinary**

This case began with a traffic stop. Immediately upon being stopped, the Mr. Chinchilla began cooperating with law enforcement, even though he was not the driver of the vehicle. *Peru Police Department Report,* page 5. When the arresting officer asked the driver how many passengers were in the vehicle, it was Mr. Chinchilla who answered by interrupting and handing the officer a piece of paper with the names of the passengers, along with their destinations. *Id.* at page 6. Mr. Chinchilla fully explained the details of their trip to the officer and continued to cooperate throughout the incident. He later cooperated fully with agents from ICE and provided all the details, including the amount he was paid. *Department of Homeland Security ICE Report of Investigation.*

As the government acknowledges, the defendant's timely plea avoided the need for Rule 15 depositions in regards to the 10 passengers. This is an important mitigating factor because "[t]his reduced the government's need to prepare for and conduct material witness depositions and also eliminated the need for the Court's time for these depositions." *Government Version*, page 4. In this case, the defendant's cooperation not only saved the government the time and expense of preparing for trial, but for preparing

3

difficult depositions as well. His cooperation also avoided the need for innocent people to be detained while awaiting their depositions.

Mr. Chinchilla began cooperating with law enforcement immediately. He did this before being promised anything and before he had any idea whether he would ever get anything in return. Once the case was turned over to the court system, he continued to cooperate. Unlike many defendants, he did not drag his feet and cooperate only when it was his last hope to get a 2-point reduction.

Mr. Chinchilla's cooperation demonstrates a willingness to accept responsibility and to do whatever he can to make amends. This is not adequately reflected in the government's offer to recommend a sentence at the low end of the guideline range, especially if the court adopts the range suggested in the PSI rather than in the Government's Version, nor is it adequately reflected in the reductions for acceptance and timely notice. This case involves no weapons or violence, no drugs or alcohol, no harm to any victims. The defendant is a family man with no criminal history. Under these facts, a recommendation at the low end of the range would be appropriate in any event, even without the additional cooperation. The defendant's unusual degree of cooperation should be rewarded with a sentence below the guideline range so that it adequately captures the helpfulness of his actions. Therefore, a sentence below the reduction called for in the plea agreement is justified.

Mr. Chinchilla's extraordinary cooperation speaks directly to §3553(a)'s concern with the justness of the punishment imposed.

## 2.  The Sentence Should Encourage Cooperation

The over-arching goals of deterrence are best served if Mr. Chinchilla receives a sentence that fully accounts for his unusual degree and timeliness of cooperation. The sentence should encourage future suspects to cooperate as fully as Mr. Chinchilla. His cooperation was total and he did everything asked of him and did it right away. On the other hand, the longer the sentence for Mr. Chinchilla, the more likely it will be that future suspects will decide not to cooperate or to plead out only at the last minute before losing the point for timely notice.  Society would be much better off if people acted the way Mr. Chinchilla has acted ever since being stopped on the highway. The Court can send a message: early and full cooperation is the right thing to do and the smart thing to do.

This factor reflects §3553(a)'s concern for respect for the law. Any sentence that seems to inadequately reward a cooperating defendant will suggest to the public in general that those who violate the law that cooperation with law enforcement will not pay.

## 3.  Mr. Chinchilla's Misconduct was an Aberration

To begin with, he has no criminal history. He has lived a law-abiding life. He has worked, attended church, and tried to start a family. His behavior in this case was a single occurrence, undertaken without any real planning on his part. It was one trip for one fee, and not an ongoing criminal enterprise. Though wrong, the trip itself did not have a malevolent design. The purpose of the trip was to place these people in jobs. It was not to use them as drug couriers or force them into slavery.

If this was not part of a criminal enterprise, if it was truly an aberration, the Court would be right in asking why he did it. While not excusing his behavior, Mr. Chinchilla's motivation was simply to take care of his pregnant fiancée. He picks up as much work as he can, but he and his fiancée are poor. He has children from a previous relationship, and the mother of his children left him after her family pressured her because Mr. Chinchilla was too poor to be a good provider. This time around, he was desperate not to fail as a provider. Again, this in no way is intended to make light of the crime or excuse his behavior, but it does help explain why he chose to do it.

As explained above, he did everything he could to mitigate the effects of the offense. His otherwise law-abiding life and his attempts to make things right after his arrest demonstrate that he has gotten the message and has no risk of recidivism. His sole concern upon being released from confinement will be to get married and find steady work so that he can provide for his wife and child.

We have provided several letters from family and friends. The letters are effusive with love and support for Mr. Chinchilla. They might not show Mr. Chinchilla to be a unique case, such that they alone would support the kind of sentence we're asking for, but they corroborate the notion that his behavior in this instance was an aberration. Several of those people are flying from Los Angeles to Chicago to attend the sentencing hearing and show Mr. Chinchilla that they love him in spite of what he has done.

The concern for protecting the public from further crimes is best served by recognizing this behavior as an aberration.

**4.  Mr. Chinchilla has Excellent Rehabilitation Potential**

What may be unique about Mr. Chinchilla, what is certainly rare among this Court's typical defendants, is that he began working at the age of 6, doing farm labor before school. He was raised by his mother and worked throughout high school to help her make ends meet. He has never been professionally trained but he has taken work consistently, and has never been too proud to do hard work.

He is physically healthy and capable of returning to manual labor either as a handyman or in construction. He has no history of alcohol or drug problems. He is a soccer enthusiast and keeps himself in shape. He has no mental health disorders. He was a leader in his church, doing numerous selfless acts. As the letter from his pastor makes clear, this is not someone who found religion only as a last resort. After he is released, Mr. Chinchilla is welcome to stay with his fiancée and her mother, so he will have a stable residence.

He has overcome many obstacles in his life, including the death of his father when Mr. Chinchilla was very young, and he is dedicated to once again being a contributing member of society. Unlike many offenders who come before this Court, he has asked for mercy and forgiveness.

The history and characteristics of the defendant show that the sentence we seek will best serve the concerns of §3553(a)(1).

## B.  DEFENDANT'S PROPOSED SENTENCE

### 1.  The Court Should Use the Government's Calculations as a Starting Point

As a preliminary matter, the defense requests that the Court use the Government's recommended guideline range as its starting point, rather than the range provided in the PSI. According the PSI, the offense level is 16; according the Government, the offense level is 14. The PSI's level is higher because it adds a two-level enhancement because the van was above its seating capacity. This enhancement was suggested under §2L1.1(b)(6).

However, a two-level enhancement under this provision is proper only when the defendant recklessly created a substantial risk of death or serious bodily injury. There has been no showing that the overcrowding put anyone at any particular risk, let alone a substantial risk of death or serious bodily injury. The U.S. Probation Officer who wrote the report does not have sufficient expertise to draw that conclusion. The Federal Sentencing Guidelines Handbook cites cases where courts have found that this enhancement can be applied for overloading a van. However, these cases all made clear findings as to the number of passengers and number of seatbelts. In this case, the PSI merely notes that there were not enough seatbelts for all the passengers without citing a source for this information. The Government does not cite this in its version; it is not a fact in the plea agreement; it is not noted in the arrest report, ICE report, or the affidavit signed by the ICE agent in support of the criminal complaint.

The defense contends that there has been no showing that the van was overloaded, let alone that the facts are analogous to those of the cases cited in the Handbook. Absent a

showing of (1) substantial risk, of (2) death, or (3) serious bodily injury, by a

preponderance of the evidence, we ask that the Court not apply this enhancement.

**2.  The Enhancement for Minors Should be Mitigated by their Age and Appearance**

The government seeks a two-level enhancement because there were two minors in

the van. While the defense concedes that there were two minors in the vehicle, the

violation of this provision is more technical than substantial. While not making light of

the issue, the defense notes that the minors' parents or grandparents were apparently

aware that the minors were making the trip and were in favor of it. *Peru Police*

*Department Report*, page 9 and 10. Moreover, the minors were 16. This is relevant

because the defendant insists he did not know they were minors until told so by law

enforcement. There is no evidence that he knew they were minors at any point before

that. Their ages make it plausible that their appearance did not give the defendant any

reason to believe they were underage.

Please note that the defendant offers this as context and mitigation. He does not

offer it as an excuse or to deny in any way the seriousness of the concerns of 2L1.1(b)(4).

**3.  The Defense Recommends a Sentence of no Greater than a Year and a Day**

In light of the factors addressed in section A, above, the defense recommends a sentence of a not greater than a year and a day of confinement. Additionally, since the defendant has no ability to pay a fine we ask that one not be adjudged.

Respectfully Submitted,

_____s/Keith J. Scherer_____
Attorney for Defendant, Boris Chinchilla

Keith J. Scherer
Law Office of Keith J. Scherer, PC
6585 N. Avondale Ave., Suite D
Chicago, IL 60631
(773)774-6741